UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEELOD SHATERIAN,<br><br>   Plaintiff,<br>   v.<br><br>MAPFRE INSURANCE COMPANY et al.,<br><br>   Defendants. | CASE NO. 2:24-cv-01509-TL<br><br>ORDER ON MOTION TO COMPEL |

This matter is before the Court on Plaintiff's Motion to Compel. Dkt. No. 19. Having reviewed the motion, Defendants' response (Dkt. No. 23), Plaintiff's reply (Dkt. No. 25), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

**I.   BACKGROUND**

This is a bad-faith insurance complaint. *See generally* Dkt. No. 9 (amended complaint). Plaintiff, Meelod Shaterian, alleges that, after his car was stolen, his insurer(s), Defendants MAPFRE Insurance Company ("MAPFRE") and Commerce West Insurance Company ("Commerce West") failed to honor the terms of his automobile insurance policy. *See generally*

ORDER ON MOTION TO COMPEL - 1

*id.* Plaintiff's amended complaint ascribes the alleged misconduct to "Meelod's insurer," but Plaintiff's pleading does not identify which Defendant is the actual insurer. *See generally id.* In removing the original complaint to federal court, Defendants advised that "[t]he proper insuring entity is Commerce West Insurance Company." Dkt. No. 1 (notice of removal) at 1 n.1. Further, the response to Plaintiff's motion is titled "Commerce West's Response to Plaintiff's Motion to Compel." Dkt. No. 23 at 1. In light of this, the Court will construe "Meelod's insurer" as referring to Defendant Commerce West.

On March 7, 2024, Plaintiff's 2019 Audi A4 was "stolen from in front of his residence in Seattle, Washington." Dkt. No. 9 ¶¶ 12–13. Plaintiff reported the theft to the Seattle Police Department ("SPD") and filed a claim with Defendant Commerce West. *Id.* ¶¶ 14–15. On March 8, 2024, Defendant Commerce West issued a reservation of rights letter to Amir Shaterian, Plaintiff's father.[1] *Id.* ¶ 17. The letter noted that Defendant Commerce West had found "potential inconsistencies with the presented claim." *Id.* Some time after the alleged theft, SPD recovered the A4, which "appeared to have been in an accident." *Id.* ¶ 19. The vehicle was transported to the home of Plaintiff's parents where, "soon thereafter," Defendant Commerce West inspected it. *Id.* ¶¶ 20–21.

On June 6, 2024, Plaintiff filed an administrative complaint with the Washington State Office of Insurance Commissioner ("OIC"), asserting his dissatisfaction with his insurer's handling of the claim. Dkt. No. 20-1 (Ex. A) at 4–5 (OIC complaint). In his administrative complaint, Plaintiff wrote, "I have no idea what to do next, or how to get my claim resolved. I fear legal action is my only option with my insurer refusing to act in good faith or adhere to my comprehensive coverage." *Id.* at 5. On June 7, 2024, OIC transmitted the complaint to Defendant

---

[1] Plaintiff alleges that Defendant Commerce West "issued an insurance policy to [Plaintiff] and his family, insuring [] five of their vehicles." Dkt. No. 9 ¶ 9.

ORDER ON MOTION TO COMPEL - 2

1    MAPFRE and directed the insurer to respond by July 1, 2024. *Id.* at 2–3 (OIC letter).[2] On June

2    26, 2024, having determined that "the loss did not occur as reported," Defendant Commerce

3    West notified Plaintiff that it had denied his claim. *Id.* ¶¶ 22–23.

4            On August 20, 2024, Plaintiff filed a civil action against Defendant MAPFRE in King

5    County Superior Court. *See* Dkt. No. 1-2 (complaint). On September 20, 2024, Defendant

6    MAPFRE removed the complaint to district court. Dkt. No. 1 (Notice of Removal). On October

7    17, 2024, Plaintiff filed an amended complaint that added Commerce West as a defendant. Dkt.

8    No. 9. Defendants answered (Dkt. No. 10), and the Court set a trial date of October 20, 2025

9    (Dkt. No. 12). The Court established May 23, 2025, as the deadline to complete discovery. *Id.*

10           On April 23, 2025, Plaintiff filed the instant motion to compel. Dkt. No. 19.

11                              **II.    LEGAL STANDARD**

12          Federal Rule of Civil Procedure 26 allows parties to obtain discovery regarding:

13          any nonprivileged matter that is relevant to any party's claim or
            defense and proportional to the needs of the case, considering the
14          importance of the issues at stake in the action, the amount in
            controversy, the parties' relative access to relevant information, the
15          parties' resources, the importance of the discovery in resolving the
            issues, and whether the burden or expense of the proposed
16          discovery outweighs its likely benefit.

17   Fed. R. Civ. P. 26(b)(1). For purposes of discovery, "Relevant information . . . is information

18   reasonably calculated to lead to the discovery of admissible evidence." *Pizzuto v. Tewalt*, 136

19   F.4th 855, 868 (9th Cir. 2025) (cleaned up). "[B]road discretion is vested in the trial court to

20   permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

21          Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an

22   order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

23   ---

24   [2] The Court omits at this time a lengthy recitation of the alleged shortcomings in Defendant Commerce West's handling of Plaintiff's claim. *See* Dkt. No. 9 ¶¶ 23–31.

ORDER ON MOTION TO COMPEL - 3

1   The court may order a party to provide further responses to an "evasive or incomplete disclosure,
2   answer, or response." Fed. R. Civ. P. 37(a)(4). The party seeking to compel discovery has the
3   burden of establishing that its requests are relevant. Fed. R. Civ. P. 26(b)(1). However, once this
4   showing is made, the party seeking a protective order must "carry a heavy burden of showing
5   why discovery" should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
6   1975).

### III. DISCUSSION

Plaintiff asks the Court to compel Defendant Commerce West to produce the entire claim file for the claim at issue in this case. *See* Dkt. No. 19 at 6. Although Defendant Commerce West has produced portions of the claim file in response to a request for production, they have refused to produce "*any* materials created after June 7, 2024—the date Plaintiff allegedly 'threatened litigation' by filing an Office of the Insurance Commissioner complaint." *Id.* at 1. Defendant Commerce West asserts that such materials are "protected by the work-product doctrine [and] attorney-client privilege," and that they were "prepared in anticipation of litigation." Dkt. No. 20-2 (Ex. B) at 3–4; *see* Dkt. No. 23 at 5.

**A.    Attorney–Client Privilege**

In bad-faith insurance claims in Washington, there is a presumption of discoverability for the insurer's claim file for the claim that underlies the allegations of bad faith. *See Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 696–97, 699, 295 P.3d 239 (2013). As the Washington Supreme Court observed in *Cedell*, "[t]he insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's handling of a claim is litigation or the threat of litigation that involves the advice of counsel." *Id.* at 696. Therefore, "[t]o permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or employed by insurers would unreasonably

ORDER ON MOTION TO COMPEL - 4

obstruct discovery of meritorious claims and conceal unwarranted practices." *Id.* at 696–97 (citing *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 699–700 (D. Mont. 1986)). The only recognized exception to this presumption of discoverability is for cases involving underinsured motorists ("UIM").[3] *Id.* at 697; *see Sixty-01 Ass'n of Apt. Owners v. Pub. Serv. Ins. Co.*, No. C22-1373, 2023 WL 7921091, at *2 (W.D. Wash. Nov. 16, 2023) (examining *Cedell*).

But courts in this District have concluded that *Cedell* applies only to assertions of attorney–client privilege. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-611, 2014 WL 2526901, at *8 (W.D. Wash. May 27, 2014); *see Young v. Safeco Ins. Co. of Am.*, No. C20-1816, 2022 WL 1404650, at *1 (W.D. Wash. May 4, 2022).[4] Here, had Defendant Commerce West invoked attorney–client privilege exclusively to withhold production of the requested documents, the *Cedell* presumption of discoverability would stymie its efforts to keep the documents from Plaintiff. But Defendant Commerce West also objected to Plaintiff's request on the basis of the work product doctrine. *See* Dkt. No. 23 at 4–5; Dkt. No. 20-2 at 3.

**B.   Work Product Doctrine**

"*Cedell* is . . . inapplicable when an insurer withholds documents under the work product doctrine in federal court." *MKB Constructors*, 2014 WL 2526901, at *8. "[T]he attorney-client privilege is a substantive evidentiary privilege, [while] the work product doctrine is a procedural

---

[3] Defendant Commerce West cites *Dreher v Allstate Fire and Casualty Insurance Co.*, No. C24-139, 2024 WL 4652208 (E.D. Wash. Nov. 1, 2024), in support of its opposition to Plaintiff's motion. Dkt. No. 23 at 5. However, *Dreher* involved a UIM claim and is therefore inapposite to this case.

[4] The Court notes that a court in the neighboring district has interpreted *Cedell* differently. *See Emery v. Nat'l Union Fire Ins. Co.*, No. C12-215, 2013 WL 11842002, at *2 (E.D. Wash. Apr. 26, 2013) ("Although *Cedell* focuses primarily upon the attorney–client privilege, the case clearly states that the presumption applies equally to the work product doctrine."). But in framing the *Cedell* opinion, the Washington Supreme Court stated, "This case turns on the application and scope of the attorney-client privilege in a claim for insurance bad faith." *Cedell*, 176 Wn.2d at 690. This Court is further persuaded by the determination made by the *MKB Constructors* and *Young* courts, among others, that while a federal court may apply *Cedell*, a state-law case, to the *substantive* question of attorney–client privilege, the *Erie* doctrine requires that it apply federal law to the *procedural* question of the work product doctrine. *See MKB Constructors*, 2014 WL 2526901, at *6–7 (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)).

immunity governed by the Federal Rules of Civil Procedure, specifically Rule 26(b)(3)." *Id.*; *see also United States v. Nobles*, 422 U.S. 225, 246 (1975) ("[T]he 'work product' doctrine [operates] solely as a limitation on pretrial discovery and not as a qualified evidentiary privilege."). Therefore, "[t]he Court considers attorney-client privilege in first-party bad faith insurance cases pursuant to *Cedell* . . . while the work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3) and applicable federal case law." *Young*, 2022 WL 1404650, at *1; *see also Tubar v. Clift*, No. C05-1154, 2007 WL 30872, at *3 (W.D. Wash. Jan. 4, 2007) ("[I]n cases involving the attorney work product doctrine, federal law controls in all instances.") (citing *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product doctrine is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).")). "[I]f there is a federal rule of procedure covering a particular point of practice or pleading in dispute, such rule governs in a federal diversity action even if resort to state law would lead to a different result." *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 740 (9th Cir. 1982) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).[5]

"The work-product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)); *see also* Fed. R. Civ. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case'. . . ." *Sanmina Corp.*, 968 F.3d at 1119 (quoting *Nobles*, 422 U.S. at 238–39). Further, the work

---

[5] The only limitation is that the federal rule must not violate the Rules Enabling Act, 28 U.S.C. § 2072, or the United States Constitution. *See Santana*, 686 F.2d at 740.

product doctrine is not absolute, because the doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions[;] it does not protect facts concerning the creation of work product or facts contained within the work product." *Caldwell v. Brown*, No. C09-1332, 2010 WL 1837717, at *1 (W.D. Wash. May 3, 2010) (quoting *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)); *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2023 (3d ed.) ("[T]he courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.").

Under Rule 26(b)(3)(A)(ii), a party can obtain discovery of work product only on a showing of "substantial need," as well as an "inability to obtain equivalent information from other sources." *MKB Constructors*, 2014 WL 2526901, at *3. But "[e]ven when a court orders disclosure of work product, 'it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(3)(B)); *see Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 n.3 (9th Cir. 2014) (noting that such "opinion" work product is specifically what the doctrine is designed to protect).

In bad-faith insurance cases in the Ninth Circuit, courts use a "case-by-case approach to work product questions." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). A party seeking *opinion* work product must demonstrate that the "mental impressions are *at issue* and their need for the material is compelling." *Id.* "At a minimum, compelling need requires that the information sought is not available elsewhere or through the testimony of another witness." *MKB Constructors*, 2014 WL 2526901, at *3.

C. **Application of the Privileges**

The Court distinguishes between materials created or obtained before June 26, 2024, when Defendant Commerce West denied Plaintiff's claim, and after. In bad-faith litigation, an insurer's denial of a claim represents a significant milestone for issues of discoverability. With respect to attorney-client privilege, *Cedell* makes clear that the presumption of discoverability applies where a defendant was engaged in the "tasks of investigating and evaluating or processing the claim"—all quasi-fiduciary, pre-denial activities. *See Cedell*, 176 Wn.2d at 699. With respect to the work product doctrine, as will be discussed below, Ninth Circuit precedent distinguishes between work product specifically "concerning the handling of the claim," and work product more generally prepared for litigation. *See Holmgren*, 976 F.2d at 577.

1. **Pre-Denial Materials**

With respect to those materials in the claim file that pre-date Defendant Commerce West's June 26, 2024, denial of Plaintiff's claim, the *Cedell* presumption of discoverability defeats Defendant Commerce West's assertion of attorney–client privilege. Defendant Commerce West fails to show that its counsel was not engaged in quasi-fiduciary tasks when such pre-denial records were created or obtained. Such a showing is required to rebut the *Cedell* presumption of the discoverability of material related to an insurer's handling of a claim. *See Cedell*, 176 Wn.2d at 699; *see also Perez v. Am. Fam. Ins. Co.*, No. C20-849, 2021 WL 928180, at *3 (W.D. Wash. Mar. 11, 2021) (finding that records created or obtained by insurer while engaged in "investigation and adjustment actions . . . will likely be . . . discoverable" under the *Cedell* presumption).

As to the work product doctrine, Defendant Commerce West asserts that everything it obtained or created after Plaintiff raised the slightest specter of litigation is protected by the work product doctrine. *See* Dkt. No. 23 at 1. Defendant Commerce West characterizes Plaintiff's June

6, 2024, statement in the OIC complaint—i.e., "I fear legal action is my only option . . . ." (Dkt. No. 24-1 at 13)—as a threat to litigate. Dkt. No. 23 at 4. Defendant Commerce West therefore characterizes all materials created or obtained thereafter as protected by the work product doctrine. *Id.* Plaintiff, in contrast, argues his statement was merely a "cry for help to *avoid* litigation." Dkt. No. 19 at 5.

Based on the facts presented (*see* Dkt. No. 25 at 2–3) and the circumstances in which Plaintiff wrote those words, the Court agrees with Plaintiff's characterization of the statement as a last attempt to resolve the dispute short of litigation. The only case Defendant Commerce West cites in support of its proposition is *Dreher v. Allstate Fire & Cas. Ins. Co.*, No. C24-139, 2024 WL 4652208 (E.D. Wash. Nov. 1, 2024), a case that involved a UIM claim. Dkt. No. 23 at 5. *But see supra* n.3. Further, beyond its surface-level inapplicability to the instant matter—bad-faith UIM cases are categorically different from other bad-faith cases—*Dreher* is also incomparable here because the threat of litigation in *Dreher* took the form of a five-page demand letter, written by an attorney on firm letterhead, that advised the defendant-insurer that its failure to respond to the plaintiff-insured with a counteroffer within 30 days "[would] result in a lawsuit being filed . . . ." Knapp Decl. Ex. A at 2–6, *Dreher v. Allstate Fire & Cas. Ins. Co.*, No. C24-139 (E.D. Wash. Oct. 2, 2024), Dkt. No. 25-1. Here, in contrast, the purported "threat of litigation" comprises eight words in an administrative complaint. *See* Dkt. No. 24-1 at 13. These "threats" are simply not comparable with one another, and *Dreher* is not an appropriate comparator case.[6]

Further, even if the work product doctrine did apply to pre-denial material, Plaintiff has established both elements needed to unlock it. "In a bad faith insurance claim settlement case,

---

[6] Defendants in this case are represented by the same counsel as the defendants in *Dreher*. Given counsel's presumed familiarity with both cases, Defendant Commerce West's assertion here that it invoked the work product doctrine "pursuant to *Dreher*" is particularly misplaced. Dkt. No. 23 at 5.

the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue.'" *Holmgren*, 976 F.2d at 577 (quoting *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)). Further, Plaintiff's "compelling need" is illustrated by *Cedell*, which stands for the basic proposition that an insured's access to their insurer's claim file is crucial in a bad-faith case. Dkt. No. 19 at 4; *see Cedell*, 176 Wn.2d at 696 ("The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith."). Finally, Plaintiff's assertions that the information sought "cannot be obtained elsewhere," and that "[t]he only way to obtain [it] is through [its] production" are not challenged by Defendant Commerce West. Dkt. No. 19 at 6. Therefore, Plaintiff "has demonstrated the requisite level of need and hardship, [and Defendant Commerce West] must produce the material." *Holmgren*, 976 F.2d at 573.

Therefore, with respect to materials in the claim file created or obtained before Defendant Commerce West denied Plaintiff's claim on June 26, 2024, Plaintiff's motion to compel is GRANTED.

### 2. Post-Denial Materials

As to those materials that post-date Defendant Commerce West's denial of Plaintiff's claim, with respect to attorney-client privilege, the *Cedell* presumption does not apply. *See Emery v. Nat'l Union Fire Ins. Co.*, No. C12-215, 2013 WL 11842002, at *3 (E.D. Wash. Apr. 26, 2013) (finding that post-adjustment materials rebut the *Cedell* presumption of discoverability because such materials were not created in the performance of "the quasi-fiduciary tasks of investigating and evaluating or processing [of] the claim"). Defendant Commerce West asserts that "after June 26, 2024, there were no longer any claims being handled as the claim had been adjusted, denied, and Commerce West reasonably anticipated litigation." Dkt. No. 23 at 5. Because Plaintiff does not have a basis to assert that Defendant Commerce West's counsel was

still engaged in quasi-fiduciary, claim-related tasks after June 26, 2024, Plaintiff cannot rely on his flat assertion that "[u]nder *Cedell*, the presumption is that claim file materials are discoverable." Dkt. No. 19 at 6. The law is more nuanced than that, *see Emery*, 2013 WL 11842002, at *3, and Plaintiff has not provided any argument, beyond the (non-applicable) *Cedell* presumption, to demonstrate his entitlement to production of post-denial materials that might be subject to attorney–client privilege. Absent any compelling reason—such as civil fraud, *see Cedell*, 176 Wn.2 at 699–700—Plaintiff has not shown why the Court should set aside attorney–client privilege and order Defendant Commerce West to produce potentially privileged records. Nor has Plaintiff shown a need sufficiently compelling to overcome the work product doctrine. *MKB Constructors*, 2014 WL 2526901, at *3.

Still, this does not settle the issue. Defendant Commerce West has not sufficiently demonstrated that "the information [sought by Plaintiff] is privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5). Defendant Commerce West's "privilege log does not provide enough information to permit [Plaintiff] or the court 'to assess the claim' of privilege or protection from disclosure as Rule 26(b)(5) requires." *MKB Constructors*, 2014 WL 2526901, at *11.[7] According to the privilege log, *see* Dkt. No. 20-3 at 4, Defendant Commerce West withheld from production four documents described as "Post Threat of Litigation Claims File Note(s)" and redacted one document described as "Post Threat of Litigation Claims File Summary." The privilege log does not identify the author or creator of these documents, however, and the descriptions are merely restatements of the doctrine or privilege invoked. There is no indication that an attorney (or their agent) had anything whatever to do with the creation of

---

[7] Nor does it permit the Court to determine whether the withheld records are, as Plaintiff presumes, "dual purpose," and therefore susceptible to an inquiry into whether they would or "would not have been created in substantially similar form but for the prospect of litigation" under *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011).

ORDER ON MOTION TO COMPEL - 11

1   these records. The Court therefore ORDERS Defendant Commerce West to produce a
2   supplemental privilege log **within seven (7) days** of the date of this order that corrects these
3   deficiencies. The supplemental privilege log must "provide[] as detailed an explanation as is
4   necessary to support its assertion of privilege or work product protection with regard to all
5   withheld or redacted documents." *MKB Constructors*, 2014 WL 2526901, at *11. Defendant
6   Commerce West "must satisfy Washington law, and specifically *Cedell*, when it claims attorney-
7   client privilege, and Federal Rule of Civil Procedure 26(b)(3) and related federal case law when
8   it claims protection under the work product doctrine." *Id.* To satisfy *Cedell*, Defendant
9   Commerce West must show that "its attorney was not engaged in the quasi-fiduciary tasks of
10  investigating and evaluating or processing the claim, but instead in providing the insurer with
11  counsel as to its own potential liability." *Cedell*, 176 Wn.2d at 699.

**Within seven (7) days** of Plaintiff's receipt of the supplemental privilege log, the Parties SHALL confer with respect to Defendant Commerce West's invocation of attorney–client privilege and work product doctrine for the withheld and/or redacted post-denial materials. Should there still be a discovery dispute after the Parties confer, then Plaintiff may renew his motion to compel consistent with this ruling.

### IV.  CONCLUSION

Accordingly, Plaintiff's motion to compel (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Defendant Commerce West SHALL produce the entire claim file for the claim that is the subject of this case, excluding those materials produced or obtained after the June 26, 2024, denial of Plaintiff's claim.

(2) Defendant Commerce West shall produce a supplemental privilege log **no later than June 12, 2025.**

(3)  The Parties SHALL meet and confer about Defendant Commerce West's assertions of attorney-client privilege and work product doctrine **no later than seven (7) days** after Plaintiff's receipt of the supplemental privilege log.

Dated this 5th day of June 2025.

Tana Lin
United States District Judge